RECEIPT # _____
AMOUNT $ __N/A__
SUMMONS ISSUED __N/__
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE __7-19-05__

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                  Plaintiff,  )<br>                             )<br>             v.              )<br>                             )<br> $100,000.00 IN UNITED STATES )<br> CURRENCY, MORE OR LESS       )<br>                             )<br>                  Defendant.  ) | **FILED EX PARTE AND UNDER SEAL**<br><br>Civil Action No.<br><br>**05-11525 WGY** |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to 21 U.S.C. §881(a)(6), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§1345, 1355, and 1356. Venue is appropriate pursuant to 28 U.S.C. §1395.

2. The *in rem* defendant, described as $100,000.00 in U.S. Currency, seized on January 19, 2005 from a hidden compartment within a 1998 gray Ford Taurus sedan vehicle, registration 38F-W04 (the "Defendant Currency"), is now, and, during the pendency of this action, will be within the jurisdiction of this Court.

3. As outlined in detail in the Affidavit of Patrick B. Dorsey, Special Agent for Drug Enforcement Administration, attached hereto as Exhibit 1, and incorporated herein by reference, the United States has probable cause to believe that the Defendant Currency constitutes money furnished or intended to be furnished by

a person in exchange for a controlled substance, in violation of Title 21, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of Title 21.

4. The Defendant Currency is, therefore, subject to seizure and forfeiture to the United States of America, pursuant to 21 U.S.C. §881(a)(6).

WHEREFORE, the United States of America requests:

(1) that a Warrant and Monition, in the form submitted, be issued to the United States Marshals Service for the District of Massachusetts, commanding it to: (a) take custody of the Defendant Currency; and (b) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

(2) that a judgment of forfeiture be decreed against the Defendant Currency;

(3) that thereafter the Defendant Currency be disposed of according to law; and

(4) for costs and all other relief to which the United States may be entitled.

Respectfully, submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Jennifer H. Zacks
Jennifer H. Zacks
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date: 7/19/05

## Verification

I, Patrick B. Dorsey, Special Agent, DEA, state that I have read the foregoing Complaint for Forfeiture <u>In Rem</u> and the attached affidavit, and the contents thereof are true to the best of my knowledge, information, and belief.

_____
Patrick B. Dorsey
Special Agent United States
Drug Enforcement Administration

On this 14 day of July, 2005, before me, the undersigned notary public, personally appeared Patrick Dorsey, proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
Nicole E. Swiec, Notary Public
Commission expires
February 2, 2007



NICOLE E. SWIEC
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 2, 2007

# UNDER SEAL

## EXHIBIT 1

### AFFIDAVIT OF SPECIAL AGENT PATRICK B. DORSEY

I, Patrick B. Dorsey, Special Agent of the United States Drug Enforcement Agency, ("DEA"), being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration, and have been so employed for the past eight years. Prior to my employment with the DEA, I was a Police Officer for eight years with the Tallahassee Police Department, Uniform Division, in Florida. I am currently assigned to the New England Field Division Enforcement Group 3, in Boston Massachusetts. My duties and employment with DEA have consisted of enforcing federal drug violations, for which I have received training in State and Federal controlled substances law, surveillance, Title III investigations, undercover investigations, coordinating multiple jurisdiction investigations, search and seizure, asset forfeiture, money laundering, interdiction of narcotics and/or illegal proceeds, and narcotic investigation. During my employment with the DEA, I have participated in over one thousand narcotic related investigations, involving a variety of illegal drugs, including cocaine, heroin, and marijuana. I have also received training in the investigation of illegal narcotics trafficking, including the methods and procedures commonly employed by narcotics trafficers to purchase and distribute illegal drugs

and to conceal those drugs, their funds, and their proceeds.

2. The investigations in which I have participated have resulted in the seizure of illegal drugs and/or proceeds and/or funds, and numerous arrests and convictions of drug users, sellers, and traffickers of controlled substances. Based on my training and experience, I am familiar with the methods used to package and distribute illegal drugs, the codes and shorthand employed in the illegal narcotics business, and the methods and techniques used to conceal and deliver illegal drugs, their distribution, and their proceeds.

3. As a result of my personal participation in this investigation, my conversations with other agents and officers, and my review and analysis of reports and other documentary evidence, I am familiar with all aspects of this investigation. This affidavit is based both on my personal knowledge and on information that I have received from a variety of sources, including communications with other persons, reports, and observations made by other law enforcement officers.

4. This affidavit is not intended to set forth all of the information that I and other law enforcement officers have learned during the course of this investigation. Instead, it is limited to that information necessary to establish probable cause for forfeiture In Rem against the following property:

approximately $100,000 in United States currency seized on January 19, 2005 from a hidden compartment inside a gray Ford Taurus, Massachusetts registration 38FW04 (the "Defendant Currency")

5.  As described in more detail below, I have probable cause to believe that Defendant Currency is subject to seizure and forfeiture pursuant to 21 U.S.C. §881(a)(6) because it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation Controlled Substances Act, Title 21, United States Code, Section 801 et seq. (the "Controlled Substance Act") proceeds traceable to such an exchange, and/or moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of the Controlled Substance Act.

### Investigation

6.  On August 21, 2001, Andres Arango was arrested for conspiracy to possess MDMA and firearms violations. On October 16, 2002, Arango was sentenced to 171 months in federal prison. Seeking to reduce his sentence, on October 12, 2004, Arango provided information to the DEA about the narcotics trafficking activities of Rafael Ferrand-Rodriguez (Ferrand) and Alejandro Martinez. In addition, Arango provided the phone number of a cocaine contact in Bogota, Colombia (CI1), who was also willing to provide information to help Arango to reduce his sentence. CI1

3

said that Ferrand was currently living in Lynn, Massachusetts and had a drug associate named Alejandro Martinez who also lives in Lynn, Massachusetts. CI1 also provided cell and home phone numbers for Ferrand.

7.  On January 9, 2005, CI1 stated that she/he had received a telephone call from Ferrand in which Ferrand said that he was trying to purchase twenty kilograms of cocaine from someone in the Boston area. CI1 told Ferrand that she/he would speak to her/his drug associates, and that a cocaine supplier in the Boston area would call Ferrand in the next few days to make arrangements to sell the twenty kilograms of cocaine. CI1 also told Ferrand he would have to pay a $5,000 per kilogram transportation fee to cover the transportation of the cocaine from Colombia to Massachusetts. In addition to this $100,000 transportation fee, CI1 told Ferrand that, after delivery, he would have to pay for the twenty kilograms of cocaine.

8.  On January 10, 2005, Task Force Agent (TFA) Lucas Hernandez, pretending to be a Boston area cocaine supplier/dealer, called the number of Ferrand's cell phone, which had been previously supplied by CI1. TFA Herndandez introduced himself as the cocaine supplier/dealer that CI1 had said would be calling and said that he would call Ferrand back to set up a meeting to discuss the arrangements for the twenty kilogram cocaine sale. This conversation and all subsequent phone calls and meetings were in

4

Spanish, in which TFA Hernandez is fluent.

9. On January 11, 2005, at approximately 12:15 p.m., TFA Hernandez called Ferrand's cellular phone and arranged to meet later that day at the Ninety-Nine Restaurant in Revere, Massachusetts. When TFA Hernandez arrived at the Ninety-Nine Restaurant, he called Ferrand's cellular phone. Ferrand responded that he was already inside. When TFA Hernandez entered the restaurant, he met with Ferrand and another Hispanic male, later identified as Juan Alberto Quiles (Quiles). The three spoke for almost an hour, setting up the deal for twenty kilograms of cocaine.

10. TFA Hernandez told Ferrand and Quiles that he would transport twenty kilograms of cocaine from Colombia to Massachusetts and deliver the cocaine to Ferrand and Quiles. TFA Hernandez explained that the transportation fee would be $100,000, which he would collect at the same time he gave the cocaine to Ferrand and Quiles. TFA Hernandez specified that he would like to conduct the exchange of money and cocaine in a public place and that he would have to see the $100,000 before turning over the cocaine. Ferrand and Quiles agreed to these terms, but suggested that future drug transactions occur at their residences. Ferrand explained that he did not store cocaine at his residence, but that he was able to receive cocaine deliveries there.

11. Quiles stated that he and Ferrand were currently selling

5

approximately 3-4 kilograms of cocaine per week, but that they had enough customers that they would be able to sell 40-50 kilograms of cocaine on a weekly or biweekly basis.

12. Quiles asked TFA Hernandez if he had seen the cocaine and whether the cocaine was of good quality. TFA Hernandez assured Quiles that the cocaine was of excellent quality and offered to provide one kilogram of cocaine as a sample. However, Ferrand and Quiles rejected the offer of a sample, saying it was not necessary.

13. Ferrand asked if they could purchase the twenty kilograms of cocaine that very day, January 11, 2005. However, TFA Hernandez said that they would have to wait until the following week. Quiles explained that they could not wait until the following week because they were "dry," meaning out of cocaine. Quiles said that if TFA Hernandez could not provide the cocaine before the following week, Quiles and Ferrand would purchase their cocaine from another supplier. Ferrand reiterated that they were prepared to conduct the transaction that very day, stating that he would be able get the "papers," meaning the $100,000 transportation fee, within twenty to thirty minutes.

14. TFA Hernandez told Ferrand that he would call later that evening to tell Ferrand whether they could conduct the cocaine deal that week or the following week. The three men shook hands. At approximately 4:46 pm, Quiles and Ferrand were seen leaving the restaurant and driving off in a gray 1998 Ford Taurus bearing

Massachusetts registration 38FW04.

15. Later that evening, TFA Hernandez called Ferrand and told him that the transaction could take place on Friday, January 14, 2005.

16. On January 14, 2005, TFA Hernandez called Ferrand's cell phone and made arrangements to meet him at approximately 11:30 a.m. at the Ninety-Nine Restaurant in Revere, Massachusetts. As scheduled, TFA Hernandez met with Ferrand and Quiles. At this meeting, TFA Hernandez explained that, because of a shortage in the most recent cocaine shipment, despite their previous agreement, he would not be able to immediately provide twenty kilograms of cocaine. Ferrand and Quiles asked when the next shipment of cocaine would arrive. TFA Hernandez told them that the supplier who had agreed to provide the twenty kilograms would not be receiving another cocaine shipment for approximately three to four weeks. However, TFA Hernandez offered to obtain twenty kilograms of cocaine from a different supplier.

17. The three then began to discuss the price of the cocaine. Ferrand said that he had been paying his own supplier $16,500 per kilogram of cocaine. TFA Hernadez said that the supplier from whom he planned to obtain the cocaine charged $20,000 per kilogram. Ferrand and Quiles balked at the price. Ferrand said that the $20,000 per kilogram price was too high, since he planned to sell the cocaine to his customers for $19,000 per kilogram. Quiles told

TFA Hernandez, that in order for them to make a profit on cocaine priced at $20,000 per kilogram, they would have to break the kilograms down and sell smaller quantities of cocaine, which they preferred not to do.

18. Negotiations continued. Ferrand and Quiles offered $17,500 per kilogram and TFA Hernandez countered with $18,000. Quiles said that, if they paid $18,000 per kilogram of cocaine, they would have to increase the price charged to their cocaine customers. Quiles asked if, once they were buying cocaine on a regular basis from TFA Hernandez, they would be able to get a better deal. TFA Hernandez said he would have to check with his associates. Ferrand and Quiles also said that they did not want to pay the full amount due for the cocaine at the time of delivery. TFA Hernandez said that the only money that Ferrand and Quiles would have to pay at the time of the delivery of the twenty kilograms of cocaine was the $100,000 ($5,000 per kilo) transportation fee, and that the remainder could be paid over time on a weekly basis.

19. Later that evening, TFA Hernandez called Ferrand and agreed that the price of the cocaine would be $17,500 per kilogram, with a $5000 per kilogram transportation fee.

20. On January 19, 2005, TFA Hernandez called Ferrand's cellular phone and suggested they meet at approximately 2:00 p.m. in the parking lot of Staples Office Supply Store, Wonderland

8

Market Place, Revere, Massachusetts to finalize the cocaine transaction. At this meeting, TFA Hernandez asked if they were prepared to conduct the cocaine transaction. Both Ferrand and Quiles stated they were prepared. TFA Hernandez then said that they should meet in one hour at Uno's Restaurant, located at the Northgate Shopping Center, Squire Road, Revere, Massachusetts, and, at that time, he would need to see the $100,000 transportation fee before he delivered the twenty kilograms of cocaine.

21. At approximately 3:28 p.m. Quiles arrived at Uno's Restaurant, driving a gray Ford Taurus, bearing Massachusetts number 38FW04. TFA Hernandez asked to see the $100,000 transportation fee. Quiles said that the $100,000 was inside a hidden compartment in the car. Quiles shut off the ventilation, put both the front side driver and passenger's windows down and pressed the emergency brake. Quiles took a small screwdriver with a yellow handle and pried open the passenger's side air bag. TFA Hernandez saw the air bag had been removed. Inside the vehicle's hidden compartment were four piles of United States currency. TFA Hernandez asked Quiles if all the money was there. Quiles said that each of the four piles contained $25,000, totaling the $100,000 transportation fee previously agreed on. TFA Hernandez told Quiles to drive to Home Depot, located on Route 1 Saugus, Massachusetts, where they would exchange the $100,000 for twenty kilograms of cocaine.

22. DEA then notified the Massachusetts State Police and informed them about the $100,000 in the hidden compartment in the gray Ford Taurus. Massachusetts State Trooper James A. Bazzinotti pulled over Quiles' car in the break down lane at the 500 Block of Broadway, Route 1 North, Revere, Massachusetts. Trooper Bazzinotti then conducted a search of the vehicle. A certified drug detection dog, "Hooch," alerted to the passenger's side airbag area. When asked about any hidden compartment in the car, Quiles stated that he had no knowledge of any modifications that had been made to the vehicle. Trooper Bazzinotti then opened the hidden compartment and saw four stacks of United States currency.[1] The vehicle, with the money in it, was seized.

23. As a result of this stop, the $100,000 of United States currency inside the car's hidden compartment was seized by Massachusetts State Police, who turned it over to DEA.

24. While Quiles' car was being stopped, Ferrand telephoned TFA Hernandez and told him that Quiles had been stopped by the police and that they could not go forward with the cocaine transaction. Ferrand told TFA Hernandez that he would call him later. However, TFA Hernandez never heard from Ferrand again and on or about January 21, 2005, Ferrand's cellular phone number, which TFA Hernandez was using to contact him, was disconnected.

---

[1] Originally, the amount of currency was miscounted as $99,000. Later, when recounted by the Federal Reserve Bank, the amount was determined to be $100,000.

25. Based upon the facts stated above, I have probable cause to believe that the Defendant Currency represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the federal drug laws, is proceeds traceable to such an exchange, and/or is used or intended to be used to facilitate a violation of the federal drug laws. There is therefore probable cause to believe that the $100,000 is forfeitable to the United States of America pursuant to 21 U.S.C. §881(a)(6).

Signed under the pains and penalties of perjury this /9 day of July, 2005.

_____
Patrick B. Dorsey, Special Agent
United States Drug Enforcement Administration

11

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$100,000 in United States Currency

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney'S (Firm Name, Address, and Telephone Number)
Jennifer H. Zacks, AUSA
US Attorney Office
One Courthouse Way, Suite 9200
Boston, MA 02210 (617)748-3100

Attorneys (If Known)
05-11525 WGY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | / ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Currency constitues money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of Title 21 U.S.C. §881 (a) (6)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE: July 19, 2005
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  United States of America v. $100,000 United States Currency

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   __     I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   XX    II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   __    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

   __    IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

   __    V.    150, 152, 153.

   05-11525 WGY

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                                YES ☐       NO ☒X

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
                                                                YES ☐       NO ☒X
   If so, is the u.s.a. or an officer, agent or employee of the u.s. a party?
                                                                YES ☐       NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 usc §2284?
                                                                YES ☐       NO ☒XX

7. Do all of the parties in this action, excluding governmental agencies of the united states and the commonwealth of massachusetts ("governmental agencies"), residing in massachusetts reside in the same division? - (See local rule 40.1(d)).
                                                                YES ☐       NO ☐   Not Applicable

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☐         Central Division ☐         Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐         Central Division ☐         Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                                                                YES ☐       NO ☐   Not Applicable

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Jennifer H. Zacks, Assistant United States Attorney
ADDRESS  U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210
TELEPHONE NO.  (617) 748-3100

(Cover sheet local.wpd - 09/12/02)



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

Main Reception: (617) 748-3100

*Jennifer H. Zacks, Assistant U.S. Attorney*
*John Joseph Moakley United States Courthouse*
*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts 02210*

July 19, 2005

**FILED UNDER SEAL**

Clerk's Office
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA  02210

05 - 11525 WGY

Re:  United States of America v. $100,000 in United States Currency

Dear Sir/Madam:

Enclosed for filing, please find the following in connection with the above-referenced matter:

1. Motion to Impound;
2. Verified Complaint for Forfeiture <u>In Rem</u> and corresponding Affidavit;
2. Proposed Warrant and Monition;
3. Civil Action Cover Sheet and filing papers for the Court;

Thank you for bringing this matter to the attention of the Court.

Very truly yours,

Jennifer H. Zacks
Assistant U.S. Attorney

JHZ/nes
Enclosures

cc:  M. Sullivan, U.S. Attorney, District of Massachusetts